STONE, J.
|, The plaintiff, RJAM, Inc. (“RJAM”) appeals the ruling of, the 42nd Judicial *908 District Court, Desoto Parish, in which the trial court granted a motion for summary judgment in favor of Leon Miletello d/b/a L.S.M. Amusement Company, L.S.M. Gaming, Inc., and Logansport Gaming, L.L.C. (“Miletello”), finding RJAM cannot meet the suitability requirements in order to collect damages for the breach of a video gaming contract it entered into with Miletello. For the following reasons, we affirm the ruling of the trial court.
FACTS
On September 24, 1998, RJAM sued Mi-letello for breach of contract. On April 25, 2011, the 42nd Judicial District Court (“42nd JDC” or “trial court”) granted a judgment awarding RJAM $184,681.00 in damages. In its judgment, the trial court made the following stipulation:
IT IS ADJUDGED, ORDERED AND DECREED that RJAM, INC., is not entitled to collect any damages until such time as the following conditions are met: RJAM, INC. is determined by the Gaming Division of the Louisiana State Police to have been suitable to be awarded damages under the contract for the time period awarded March 1998 to October 1999. IT IS FURTHER ADJUDGED, ORDERED AND DECREED that if RJAM satisfies the conditions stated above, or if such conditions precedent are overturned, the Court finds RJAM is entitled to receive damages ...
In RJAM, Inc. v. Miletello, 47,218 (La. App. 2 Cir. 8/8/12), 103 So.3d 503, this Court amended the trial court’s ruling and found RJAM was entitled to a damage award of $194,598.52 (“monetary judgment”) against Miletello. We affirmed the trial court’s ruling that RJAM was not entitled to collect any damages until it is determined by the Gaming Division of the Louisiana State Police to have been suitable to be awarded damages under |2the contract for the time period awarded March 1998 to October 1999 (“condition precedent”).
On October 24, 2013, RJAM filed a petition with the State of Louisiana Gaming Control Board (“the Board”) requesting the Board find RJAM suitable so that it could collect on its monetary judgment. On December 10, 2013, the Board dismissed RJAM’s petition ex proprio motu, stating:
The Louisiana Gaming Control Board lacks jurisdiction to render a suitability determination under the circumstances presented. The Board may render a suitability determination only for the purpose of administering and enforcing gaming law in the regulation of gaming activities and operations and in connection with an existing video gaming license or license application.
On December 16, 2013, RJAM filed a motion and order to reinstate petition. On December 17, 2013, the Board denied RJAM’s request to reinstate. Thereafter, on March 16, 2015, RJAM filed a petition for mandamus and/or declaratory judgment in the 19th Judicial District Court, East Baton Parish (“19th JDC”) against the State of Louisiana through the Gaming Control Board. In its petition, RJAM requested the Board:
[Rjender a determination of suitability, conditional suitability, exemption from, or waiver of suitability for limited purpose of enforcing its judgment awarded by the Second Circuit Court of Appeal, or alternatively that there be a declaratory judgment that the condition precedent requiring RJAM to be determined as suitable (“condition precedent”) to enforce the judgment is impossible making the obligation null and therefore there are no impediments to RJAM enforcing its judgment against Leon Miletello, Jr., *909 LSM Gaming, Inc., and Logansport Gaming, Inc.
On May 20, 2015, the 19th JDC, pursuant to a stipulation between the Board and RJAM, issued a consent judgment holding RJAM could not be found suitable to be awarded damages for the time period of March 1998 to ROctober 1999, because such suitability determination is not provided by law. Specifically, in its ruling, the 19th JDC made the following observation:
There is no such thing as a stand-alone application for a suitability determination; no such thing as a video gaming application for any purpose other than participation in Louisiana’s video gaming industry; there is no statute or regulation which authorizes a suitability application for the limited purposes of enforcing a private money judgment; and there is no statute, regulation or policy which devotes limited state resources legislatively allocated to the Office of State Police and the Board for enforcement of a private money judgment ...
The 19th JDC judgment was made execu-tory in the 42nd JDC on October 12, 2015.
On October 22, 2015, Miletello filed a motion for summary judgment in the 42nd JDC seeking to declare RJAM’s judgment unenforceable. On December 23, 2015, RJAM filed a motion to enforce the 19th JDC judgment, a motion to dismiss Mile-tello’s motion for summary judgment as moot, a declinatory exception of lack of subject matter jurisdiction, and a peremptory exception of no cause of action.
The trial court granted Miletello’s motion for summary judgment and denied all of RJAM’s exceptions and motions. RJAM now appeals the ruling of the trial court.
DISCUSSION

Summary Judgment

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for trial. Schultz v. Guoth, 2010-0343 (La. 1/19/11), 57 So.3d 1002, and citations therein. The motion shall be granted when the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no |,(genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966 (A)(2).
The burden of proof is on the party moving for summary judgment. However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover is not required to negate all essential elements of the adverse party’s claim, action or defense, but rather to point out to the court the absence of factual support for one or more such essential elements. Once the mover does this, the burden shifts to the adverse party to produce factual support sufficient to establish a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966 (D)(1); Jones v. Estate of Santiago, 2003-1424 (La. 4/14/04), 870 So.2d 1002.
A de novo standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court uses the same criteria that governed the district court’s determination of whether summary judgment was appropriate. Bank of New York Mellon v. Smith, 2015-0530 (La. 10/14/15), 180 So.3d 1238, 1243.
RJAM argues the trial court erred in granting Miletello’s motion for summary judgment because the condition precedent *910 that RJAM not collect any .damages until it is determined to have been suitable for the requisite time period is an impossible condition and is, therefore, null and void. RJAM argues the 19th JDC judgment that found the condition precedent impossible must be recognized and RJAM should be permitted to collect its monetary judgment. Alternatively, RJAM urges this Court to remand the |B case to the trial court so RJAM can introduce additional evidence of suitability in order to avoid a grave injustice to RJAM.
Miletello argues RJAM’s effort to overturn this Court’s ruling by bringing an action against a third party in a different district court is without merit and frivolous and RJAM cannot circumvent the trial court’s ruling by asking the 19th JDC to approve a stipulated order between it and the Board. Miletello claims RJAM has not and cannot establish it was entitled to receive revenue from video gaming for the relevant time period and therefore, the monetary judgment is unenforceable and without merit. After a thorough review of the record, we agree.
Louisiana R.S. 27:310(D) provides:
Every person who has or controls directly or indirectly more than a five percent ownership, income, or profit interest in an entity which has or applies for a license in accordance with the provisions of this Chapter, or who receives more than five percent revenue interest in the form of a commission, finder’s fee, loan repayment, or any other business expense related to the gaming operation, or who has the ability, in the opinion of the division, to exercise a significant influence over the activities of a licensee authorized or to be authorized .by this Chapter, shall meet all suitability requirements and qualifications for licensees. For the purposes of this Chapter, all gaming related associations, outstanding loans, promissory notes, or other financial indebtedness of an applicant or licensee must be revealed to the division for the purposes of determining significant influence and suitability.
Louisiana R.S. 27:28(A) provides:
[N]o person shall be eligible to obtain a license or permit, enter into a casino operating contract with the state, or obtain any other approval pursuant to the provisions of this Title unless the applicant has demonstrated by clear and convincing evidence to the board or division, where applicable, that he is suitable. For the purposes of this Title, ‘suitable’ means the applicant, licensee, casino gaming operator, permittee, or other person is:
(1) A person of good character, honesty, and integrity,
|b(2) A person whose prior activities, criminal record, if any, reputation, habits, and associations do not pose a threat to the public interest of this state or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and activities in the conduct of gaming or carrying on of the business and financial arrangements incidental thereto.
(3) Capable of and likely to conduct the activities for which the applicant, licensee, permittee, casino gaming operator, or licensed eligible facility is licensed, permitted, or approved pursuant to the provisions of this Title.
(4) Not disqualified pursuant to the provisions of Subsection B of this Section.
Simply stated, Louisiana law requires that “[ejvery person ... who receives more than five percent revenue interest in the form of a commission, finders’ fee, loan repayment, or any other business expense related to the gaming operation ... shall *911 meet all suitability requirements and qualifications for licensees.” La. R.S. 27:310(D); see also BLPR, Inc. v. National Gaming, Inc., 2010-1221 (La.App. 1 Cir. 4/6/11), 64 So.3d 779; RJAM, Inc. v. Miletello, supra at 514.
This Court affirmed the trial court’s ruling that the monetary judgment is not enforceable until RJAM has established it had met suitability at the time the contract was entered into or before it started receiving revenues from Miletello. RJAM has mischaracterized this condition precedent as a stipulation that required it to obtain a suitability determination retroactive to March of 1998. However, in actuality, the condition precedent was that RJAM provide proof that it had already met suitability requirements in accordance with the law, prior to March of 1998.
As the Board advised RJAM, it cannot go back and establish suitability as of 1998; the suitability needed to be established prior to or in 1998. The fact that RJAM has yet to provide proof of its suitability during 17that time period is indicative that it did not take the requisite steps to be deemed suitable. Had the necessary steps been taken before RJAM contracted with Miletello, RJAM would have evidence of its suitability and incidentally could satisfy the condition precedent in order to collect the money judgment. RJAM cannot claim the condition precedent is null and void simply because it is unable to fulfill the condition. If this were a legitimate argument, every condition precedent that could not be met would be deemed null and void and there would be no need for conditions.
Likewise, the fact that RJAM guilefully sought judgment in the 19th JDC to somehow deem the condition precedent impossible, bears no effect on this Court’s previous opinion. The 19th JDC judgment was rendered pursuant to a stipulation between RJAM and the Board stating the Board is not authorized to issue suitability determinations for the limited purposes of enforcing a private money judgment. However, as noted, the trial court’s prior ruling mandated a showing of suitability from March 1998 to October 1999, not an acquiring of new suitability. Incidentally, the 19th JDC judgment does not invalidate or any in other way alter the trial court’s prior ruling or this Court’s affirming of that ruling. RJAM had an obligation to demonstrate, by clear and convincing evidence, suitability for licensing prior to attaining rights, title, and interest in the contract with Mi-letello. This obligation is not waived by the 19th JDC stipulated judgment. This assignment lacks merit.

Subjecih-Matter Jurisdiction

RJAM argues the trial court erred in denying its declinatory exception of subject-matter jurisdiction because the trial court was divested of jurisdiction over the matter sub judice. RJAM contends a trial court has no | jurisdiction to consider motions once the appellant has met the requirements to have an appeal ordered. RJAM claims since a final judgment and appeal were taken in' this matter, the trial court did not retain jurisdiction to hear Miletello’s motion for summary judgment.
The district courts are vested with original jurisdiction of all civil and criminal matters under La. Const. Art. V, § 16(A), unless otherwise authorized in the constitution. Central La. Elec. Co. v. La. Public Serv. Corn’n, 601 So.2d 1383 (La. 1992). Louisiana C.C. P. art. 2088 provides in pertinent part:
A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of ap *912 peal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
⅜ ⅝ ⅝ ⅜ ⅜

(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;

[[Image here]]
(Emphasis Added)
The trial court rendered a decision awarding RJAM a monetary judgment against Miletello with the stipulation that RJAM provide proof of suitability before it could collect on the judgment. Miletello filed a motion for summary judgment seeking to have the monetary judgment deemed unenforceable on the grounds that RJAM cannot meet the suitability requirements. The execution of a judgment is ancillary to the judgment itself and the trial court had inherent authority to enforce its judgment in |B favor of RJAM or to deem it unenforceable. As a result, this assignment of error is without merit.

Mootness

RJAM contends the 19th JDC rendered the judgment of the trial court moot. In light of our finding that the 19th JDC judgment had no bearing on the trial court’s ruling, we find this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s ruling granting Miletello’s motion for summary judgment. Costs of appeal are assessed to RJAM.
AFFIRMED.